UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                      :

ACE AMERICAN INSURANCE COMPANY  :
f/k/a CIGNA INSURANCE
COMPANY, et al.,                            :

                      Plaintiffs,    :

        -v-                  :

GRAFTECH INTERNATIONAL LTD., f/k/a/  :
UCAR INTERNATIONAL INC., and      :
GRAFTECH INTERNATIONAL HOLDINGS  :
INC., f/k/a UCAR CARBON COMPANY INC.,:
                                     :

                     Defendants.  :
                                     :
------------------------------------------------------------ X

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/24/14

No. 12-cv-6355 (RA)

OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

    ACE American Insurance Company, f/k/a CIGNA Insurance Company, ACE Property &
Casualty Insurance Company, Insurance Company of North America, Indemnity Insurance
Company of North America, and Pacific Employers Insurance Company (collectively "ACE")
bring this declaratory judgment action pursuant to the Declaratory Judgment Act, 28 U.S.C.
§§ 2201 *et seq.*, against GrafTech International Ltd., f/k/a/ UCAR International Inc., and
GrafTech International Holdings Inc., f/k/a UCAR Carbon Company Inc., (collectively
"GrafTech"), seeking a declaration regarding their obligation to provide coverage with respect to
numerous bodily injury lawsuits filed against GrafTech under various liability insurance policies
issued to GrafTech between 1991 and 2007.  Jurisdiction is based on diversity of citizenship.

    Before the Court is GrafTech's motion to dismiss this action pursuant to the
Wilton/Brillhart abstention doctrine in favor of an action brought by GrafTech in Ohio state
court against ACE and XL Insurance America, Inc. ("XL").  XL issued an excess/umbrella
liability policy for the same period as an ACE policy pursuant to which GrafTech contends ACE

must "respond to all costs associated" with the underlying lawsuits.  (Defendants' Memorandum
of Law in Opposition to Plaintiffs' Motion for Summary Judgment ("Defs.' Opp'n") 4.)  Also
before the Court is ACE's pre-answer motion for summary judgment based on the grounds that
GrafTech has not exhausted any of the ACE policy deductibles and that an absolute pollution
exclusion in policies issued between 1997 and 2007 bars coverage for the underlying claims.
(Plaintiffs' Memorandum of Law in Support of Their Motion for Summary Judgment ("Pls.'
Mem.") 1-4.)  For the reasons discussed below, the Court grants GrafTech's motion to dismiss
on abstention grounds and denies ACE's motion for summary judgment as moot.

## BACKGROUND

Underlying this declaratory judgment action are approximately eighty bodily injury
lawsuits ("underlying claims") filed against GrafTech by former employees of Alcoa aluminum
smelting facilities who allege that they were exposed to hazardous substances in products
GrafTech supplied to Alcoa as early as 1942.  (Defs.' 56.1 ¶ 1; Pls.' Mem. 1.)[1]  GrafTech
continues to litigate these disputes and has yet to pay any judgment or settlement.  (Transcript of
Oral Argument, April 4, 2104 ("4/4/14 Tr.") 3:6-9.)  As of April 2014, defense costs totaled
approximately $2.2 million.  (4/4/14 Tr. 3:12-16.)

*The ACE Policies*

Over the period from 1991 to 2007, ACE issued a series of general, and in certain
instances excess, liability insurance policies to GrafTech.  (Defs.' 56.1 ¶ 22.)  Each policy
contained a per occurrence deductible, which varied from $250,000 to $1,000,000.  (Id. ¶ 25.)
Among the coverage issues in dispute between the parties, none of which the Court need resolve
on this motion, are: (1) whether GrafTech can recover defense costs prior to paying a judgment

---

[1] All but one of the underlying claims were filed by former employees of Alcoa or their estates.  (Defs.' 56.1 ¶ 3;
Defs.' Opp'n 2.)

or settlement on the underlying claims, (2) whether GrafTech's defense costs should be allocated to the ACE policies pursuant to an "all sums" or "pro rata" rule, and (3) whether a pollution exclusion bars coverage of the underlying claims.[2]

With respect to the first issue, ACE maintains that GrafTech cannot recover defense costs prior to paying a judgment or settlement pursuant to a deductible endorsement in the ACE policies. (Pls.' Mem. 23.) While GrafTech concedes that most of the ACE policies contain an endorsement prohibiting GrafTech from recovering defense costs until GrafTech pays an amount in judgment or settlement exceeding each policy's deductible, it contends that the ACE policy covering the period from February 25, 2002 to February 25, 2003 (the "2002 ACE Policy") did not include such provision.  (4/4/14 Tr.7:7-17.)[3]  In light of the absence of such a provision, GrafTech asserts that the 2002 ACE Policy "clearly permitted the erosion of the [policy's per occurrence] deductible by means of defense cost expenditures," thus allowing GrafTech to recover defense costs which exceed the 2002 ACE Policy's deductible of $250,000.  (Defs.' Opp'n 4; Declaration of Shane R. Heskin in Support of Plaintiffs' Motion for Summary Judgment ("Heskin Decl.") Ex. 1.)[4]

With regard to the second issue, the parties dispute the method by which GrafTech's defense costs should be allocated over the various ACE policies.  This dispute necessitates a

---

[2] Other issues that are raised in the Amended Complaint, but which the parties have yet to address in this proceeding, include whether GrafTech failed to provide "prompt written notice of an occurrence or claim, as well as a copy of the complaints for each of the [u]nderlying [c]laims," (Am. Compl. ¶ 82), whether the underlying claims were the result of an "occurrence" or constitute "bodily injury" within the meaning of the ACE policies, and whether the claims resulted from bodily injury during the ACE policy periods, (id. ¶ 84).

[3] Only the 2002 ACE Policy has been made a part of the record.  To the extent the Court references the other policies, it does so in reliance on the parties' representations as to their content.

[4] ACE submitted documents at oral argument which it purported showed that the parties amended the 2002 ACE Policy to change the deductible from $250,000 to $500,000 and prohibit GrafTech from applying defense costs to the deductible.  (4/4/14 Tr. 14:3-21.)  This issue, which neither party has briefed, is not properly before the Court at this time.

choice-of-law analysis.[5]   It is GrafTech's position that Delaware law should govern the 2002

ACE Policy and that under such law (as well as Ohio and Pennsylvania law) its defense costs

would be allocated under an "all sums" or "joint and several" allocation rule whereby an insured

may "hold the selected insurer liable for the entire loss up to the limits of that insurer's policy."

(Defs.' Opp'n 10, 12; Memorandum of Law in Support of GrafTech's Motion to Dismiss

("Defs.' Mem.") 4.)   GrafTech asserts that it may allocate all defense costs to the 2002 ACE

Policy, pursuant to the "all sums" rule, thereby recovering its costs above the 2002 ACE Policy

deductible. (Defs.' Mem. 4-5.) ACE, by contrast, maintains that New York or Connecticut law

should govern all ACE policies, and that under either state's law GrafTech's defense costs, to the

extent that they are recoverable, would be allocated under a "pro rata" allocation rule whereby an

insured's losses are prorated over applicable policies as well as periods of self-insurance. (Pls.'

Mem. 21.)   ACE asserts that pursuant to the "pro rata" rule, GrafTech's costs must be "allocated

equitably among all years in which the bodily injury occurred," (Plaintiffs' Memorandum of Law

in Opposition to Defendants' Motion to Dismiss ("Pls.' Opp'n") 9-10), and therefore would not

exceed any of the ACE policy deductibles, (Pls.' Mem. 21).[6]

Third, the parties dispute whether a pollution exclusion in ACE policies issued between

1997 and 2007 bars coverage for the underlying claims.  This exclusion defines "pollution" to

---

[5] The ACE policies do not contain a choice-of-law provision, and the issue of which state's law governs the policies is a complicated one.  The GrafTech entities are Delaware corporations, having their principal place of business in Danbury, Connecticut from 1991 to March 22, 1999; Nashville, Tennessee from March 22, 1999 to December 1, 2001; Wilmington, Delaware from December 1, 2001 to March 6, 2006; and Parma, Ohio from March 6, 2006 until today. (Defs.' 56.1 ¶ 24.)  The ACE entities are Pennsylvania corporations, having their principal place of business in Philadelphia, Pennsylvania.  (Am. Compl. ¶¶ 4-9.)  ACE is authorized to conduct business in New York, (id.), and claims that the ACE policies were "brokered, negotiated, drafted, underwritten, performed and issued in New York," a point which GrafTech disputes, (Defs.' 56.1 ¶ 23).  All but three of the underlying claims were filed in the Court of Common Pleas of Allegheny County, Pennsylvania.  (Defs.' 56.1 ¶ 4.)

[6] ACE also disputes whether Delaware courts would allow GrafTech to choose the 2002 ACE Policy to cover all of its defense costs, claiming that the 2002 ACE Policy lacks the "unique policy language" relied upon by courts that have found "all sums" allocation applicable. (Pls.' Mem. 23-24.)  Because the Court resolves the pending motions on abstention grounds, it need not address the merits of the parties' arguments as to which state's law governs the interpretation of the ACE policies or how each state's courts would allocate GrafTech's defense costs under those policies.

include "the actual, alleged or potential presence in or introduction into the environment of any substance if such substance has, or is alleged to have, the effect of making the environment impure, harmful, or dangerous" and "environment" to include "any air, land, structure or the air therein, watercourse or water, including underground water." (Defs.' 56.1 ¶ 35.) ACE maintains that the underlying claims fall within the pollution exclusion because they "allege that 'harmful, poisonous, and deleteriously and inherently dangerous fumes and vapors were released from [GrafTech's] products into the air and atmosphere' of the various facilities." (Pls.' Mem. 7-8, 24-26.) GrafTech counters that the claims against it cannot fairly be categorized as traditional pollution claims, (Defs.' Opp'n 24), and emphasizes that the claims allege not only hazardous airborne exposure to substances in GrafTech's products but also dermal exposure to those substances, (4/4/14 Tr. 28:6-9).

*The XL Policy*

In 2002, GrafTech purchased an insurance policy from XL (the "2002 XL Policy") that provided excess/umbrella coverage for the 2002 ACE Policy. (Declaration of Richard D. Milone in Support of GrafTech's Motion to Dismiss ("Milone Decl.") Ex. 4 at Sched. A.) The policy requires XL to pay those sums that GrafTech "becomes legally obligated to pay as damages arising out of an 'occurrence' which are in excess of the underlying insurance" as well as "any loss covered by the terms and conditions of this policy, but not covered as warranted by the underlying policies . . . or any other underlying insurance." (Id. at 1.) The 2002 XL Policy further provides that "[f]or damages covered by this policy, but not covered by any other insurance or underlying insurance," XL has, among other obligations, an obligation to "defend any 'suit' seeking damages covered by this policy" and "pay all reasonable expenses for any claim or 'suit' [it] defend[s]." (Id. at 1-2.)

5

## PROCEDURAL HISTORY

ACE filed the instant action on August 21, 2012, seeking a declaration regarding its obligation "to defend or indemnify [GrafTech] for losses resulting from the [u]nderlying [c]laims, and/or to reimburse Defendants for defense costs expended in connection with" those claims. (Compl. ¶ 50.) On the same day, ACE issued a letter rejecting GrafTech's coverage position with respect to the 2002 ACE Policy, (Affirmation of Thomas M. Smith in Opposition to Plaintiffs' Motion for Summary Judgment ("Smith Aff.") Ex. J), having previously "told GrafTech that it was considering GrafTech's claims and would render a coverage opinion," (Defs.' Mem. 3). Two days later, GrafTech filed an action against ACE in Delaware state court, which ACE subsequently removed to federal court. (Milone Decl. Ex. 1; Dkt. 7 at 17 n.3.) On September 18, 2012, after the Delaware action had been removed, GrafTech filed a motion to dismiss this action, urging the Court to decline to exercise discretionary jurisdiction under the Declaratory Judgment Act in light of the pending Delaware action. (Dkt. 7 at 1-2.) In so doing, GrafTech claimed that Delaware law governed the interpretation of the 2002 ACE Policy in question and that "the 'balance of convenience' weigh[ed] in favor of abstention, or alternatively, in favor of change of venue." (Id. at 2.)

In January 2013, the parties informed the Court that they had agreed to mediate the dispute. (Dk. 19.) After efforts to resolve the case were unsuccessful, GrafTech renewed its motion to dismiss, and ACE sought leave to file a pre-discovery motion for summary judgment based on the insurance policies. After the motion for summary judgment was fully briefed, GrafTech filed a motion for leave to supplement its motion to dismiss with new information, explaining that it had filed a new action against ACE and XL in the Cuyahoga County, Ohio, Court of Common Pleas, asserting claims under the 2002 ACE Policy and 2002 XL Policy. (Dkts. 35-38.) At a telephone conference held on December 19, 2013, the parties informed the

Court that the Delaware action had been voluntarily dismissed. The Court then granted GrafTech leave to file an amended motion to dismiss incorporating information about the new Ohio court action. (Dkt. 40.) Oral argument on both motions was held on April 4, 2014.

## DISCUSSION

In its motion to dismiss, GrafTech urges the Court to abstain from deciding the merits of this dispute under the Wilton/Brillhart abstention doctrine, pursuant to which federal courts have discretion to abstain from deciding declaratory judgment actions when "the questions in controversy between the parties to the federal suit . . . can better be settled in the proceeding pending in the state court." Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 495 (1942).

"[T]he Declaratory Judgment Act . . . confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995). "In determining whether to invoke the doctrine of abstention in the context of a declaratory judgment action where there exists a concurrent state court action," Travelers Indem. Co. v. Philips Electronics N. Am. Corp., 02 Civ. 9800 (WHP), 2004 WL 193564, at *2 (S.D.N.Y. Feb. 3, 2004), federal courts have considered the following factors:

> (1) the scope of the pending state proceeding and the nature of the defenses available there; (2) whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding; (3) whether the necessary parties have been joined; (4) whether such parties are amenable to process in that proceeding; (5) avoiding duplicative proceedings; (6) avoiding forum shopping; (7) the relative convenience of the fora; (8) the order of filing; and (9) choice of law.

Id. (citing Wilton, 515 U.S. at 282-83; Brillhart, 316 U.S. at 495). "Abstention under Wilton is particularly appropriate where the suit only presents issues of state, but not federal, law." TIG Ins. Co. v. Fairchild Corp., 07 Civ. 8250 (JGK), 2008 WL 2198087, at *4 (S.D.N.Y. May 27, 2008). Indeed, courts in this district have routinely abstained from deciding declaratory judgment actions brought by insurers in favor of parallel state court actions involving the same parties and policies. See, e.g., Travelers Indem. Co., 2004 WL 193564, at *2 ("[D]istrict courts

routinely invoke the doctrine of abstention in insurance coverage actions, which necessarily turn on issues of state law.") (collecting cases).

Based on a review of the relevant factors, the Court concludes that abstention is warranted in this case.

1. *Scope of the Pending State Proceeding and Whether the Claims of All Parties In Interest Can Be Satisfactorily Adjudicated in that Proceeding*

The scope of the pending state court proceeding, the nature of the defenses available there, and the ability of that proceeding to adjudicate the claims of all parties in interest weigh in favor of abstention. The Ohio action is broader than the proceeding here in that both ACE, GrafTech's primary insurer, and XL, one of its excess/umbrella insurers, are parties.[7] As both GrafTech and XL are Delaware corporations, XL cannot be joined in this action without destroying diversity. (Defs.' Mem. 4, 6-7.) Moreover, the Ohio action will address the same coverage issues presented here. While GrafTech has placed only the 2002 ACE Policy and 2002 XL Policy in dispute in the Ohio action and not all the policies issued by ACE to GrafTech between 1991 and 2007, as are at issue here, ACE can raise all the claims that it has raised here in the Ohio action as defenses, affirmative defenses, and/or counterclaims.[8] See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Warrantech Corp., 00 Civ. 5007 (NRB), 2001 WL 194903, at *3 (S.D.N.Y. Feb. 27, 2001) ("[A]ll of the issues presented in this suit are either already asserted in the [state court] action or are readily assertable as defenses to the third party claims and/or counterclaims in that suit . . . ."). Indeed, the primary difference between this action and the

---

[7] In its motion to dismiss the Ohio action, XL contends that it needs to "identify and may file suit against GrafTech's other primary and excess carriers." (No. CV-13-818739, XL Insurance America, Inc. f/k/a Winterthur International America Insurance Company's Pre-Answer Motion to Dismiss or Stay and Joinder ("XL Mem.") 2 n.2.) Neither party to this action has raised the issue of including GrafTech's other primary or excess insurers in either the Ohio action or this one.

[8] ACE does not dispute that it could adjudicate each of the policies at issue here in the Ohio state court. (Transcript of Telephone Conference, June 12, 2014 ("6/12/14 Tr.") 4:5-10, 5:2-8.)

Ohio action is the inclusion in the Ohio action of XL and the 2002 XL Policy, which provides excess/umbrella coverage for the 2002 ACE Policy, pursuant to which GrafTech maintains it is entitled to recover defense costs.[9]

### 2. *Avoiding Duplicative Proceedings*

The desire to avoid duplicative litigation also weighs in favor of abstention. GrafTech argues that its "claim against XL [in the Ohio action] requires an interpretation of the ACE policy, which creates the risk of inconsistent rulings if the cases proceed separately." (Defs.' Reply Memorandum of Law in Support of its Motion to Dismiss ("Defs.' Reply") 6.) If ACE is successful in this action, XL may seek to re-litigate the interpretation of the ACE policies in the Ohio action. (Defs.' Mem. 6, 15-16; Defs.' Reply 5-6.)

ACE responds that XL would be bound by this Court's interpretation of the ACE policies in this action under principles of issue preclusion,[10] an argument this Court finds unconvincing. (Pls.' Opp'n 19-20.) "For judgments in diversity cases, federal law incorporates the rules of preclusion applied by the State in which the rendering court sits." Taylor v. Sturgell, 553 U.S. 880, 891 n.4 (2008) (citing Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 508 (2001)). As this Court's jurisdiction is based on diversity of citizenship, the Ohio state court (or any other state court in which GrafTech files suit against XL) would look to New York res judicata law to determine the preclusive effect of this Court's judgment.

---

[9] Although, contrary to GrafTech's contention, XL does not appear to be a necessary party pursuant Rule 19, see Remington Arms Co. v. Liberty Mut. Ins. Co., 748 F. Supp. 1057, 1065 (D. Del. 1990) ("As a general proposition, courts and commentators agree that additional or excess insurers are not necessary parties to a suit between an insured and its primary or first layer excess insurer."), its inclusion in the Ohio action nonetheless supports abstention in this case.

[10] ACE invokes the doctrine of claim preclusion. Its argument, however, is more appropriately characterized as one involving issue preclusion, as it relates to whether XL could re-litigate the issue of GrafTech's coverage under the ACE policies. See Taylor v. Sturgell, 553 U.S. 880, 892 (2008) ("Under the doctrine of claim preclusion, a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.' Issue preclusion, in contrast, bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." (citations omitted)).

"As a preliminary matter, . . . collateral estoppel can be invoked only against a party to the prior action or one in privity with such a party." Howard v. Town of Bethel, 481 F. Supp. 2d 295, 301 (S.D.N.Y. 2007) (citing Buechel v. Bain, 766 N.E.2d 914, 920 (N.Y. 2001)).  Unlike GrafTech, XL is not a party to this action and therefore would generally not be bound by these proceedings.  See TIG Ins. Co., 2008 WL 2198087, at *3 ("Because this proceeding would not be binding upon . . . other [excess insurance carriers] in the state action, deciding this case raises the specter of inconsistent piecemeal litigation, subjecting the defendants here to the unfair burden of having to succeed twice on the same issue should this court rule in their favor.").  Although ACE asserts that "the test for res judicata with respect to any final judgment entered by this Court would clearly be met in the Ohio state court action," (Pls.' Opp'n 20), it provides no explanation as to why XL would be considered in privity with any party to this action.  "Furthermore, aside from the concern of inconsistent piecemeal rulings, basic notions of judicial economy favor avoiding duplicative rulings. All else being equal, reducing the number of court proceedings involved with any given issue entails a more efficient use of judicial resources." TIG Ins. Co., 2008 WL 2198087, at *4.

### 3. *Avoiding Forum Shopping*

The goal of avoiding forum shopping weighs against abstention, although this factor is not dispositive.  Both ACE and GrafTech allege that the other has engaged in forum shopping: ACE by bringing this action in the Southern District of New York and GrafTech by trying twice to transfer this action to a jurisdiction it allegedly perceives to be more favorable to its coverage claims.

With respect to ACE, GrafTech contends that the fact that ACE filed suit in New York the same day it issued a denial letter—after assuring GrafTech that it would render a coverage decision—suggests an ulterior motive on ACE's part.  (Defs.' Mem. 3.)   Although ACE

concedes that New York law is favorable to its coverage position, it argues that it had legitimate reasons to bring its action here, namely that all "[p]olicies [were] brokered, negotiated, underwritten, performed, and issued out of New York." (Pls.' Opp'n 21.)

With respect to GrafTech, ACE maintains that GrafTech's inclusion of XL in the Ohio action and subsequent request for abstention is motivated by GrafTech's desire to have this dispute litigated in a forum whose law it "admits [is] favorable to [its] position" that an "all sums" rule should govern the allocation of costs under the ACE policies. (Pls.' Opp'n 2, 21.) Notably, although XL is a Delaware Corporation and amenable to suit in Delaware state court, (Defs.' Mem. 6), GrafTech did not include XL when it initially filed suit in that court, and did not move to remand the action to Delaware state court after ACE had removed it to federal court there. GrafTech claims that the exclusion of XL was an oversight by its former counsel in its haste to bring suit in Delaware. (4/4/14 Tr. 5:11-19.) Although that may be the case, the omission of XL, and GrafTech's delay in seeking to remedy it, raises at least the suspicion that the belated argument for including XL in this dispute was prompted primarily by a desire to create a more compelling case for abstention than was available to GrafTech in its first motion to dismiss. As ACE had removed GrafTech's Delaware state court action to federal district court by the time GrafTech moved to dismiss ACE's action in this Court, the Wilton/Brillhart abstention doctrine was not available to GrafTech until it brought the present action in Ohio state court.

Nonetheless, while it may well have been a strategic decision for GrafTech to file suit in Ohio state court against ACE and XL, there are also entirely practical and compelling reasons for having done so. GrafTech's current principal place of business is in Ohio, which makes the Ohio state court a practical choice for resolving coverage disputes. Furthermore, because both GrafTech and XL are Delaware corporations, the fact that ACE had removed the Delaware

11

action to federal court meant that, as here, GrafTech could not include XL without destroying diversity. (4/4/14 Tr. 11:4-13.) Although on balance this factor weighs in favor of ACE, the alleged forum-shopping is insufficient to overcome the factors supporting abstention.

### 4. *Relative Convenience of the Fora*

The relative convenience of the fora does not weigh strongly in either direction. GrafTech asserts that "[t]he witnesses and documents relating to the underlying . . . lawsuits are within the control of GrafTech, located in Parma, Ohio, a suburb of Cleveland, and the witnesses that GrafTech would call to prove its bad faith claim [against ACE in the Ohio action] also are based primarily, if not entirely, in Cuyahoga County, Ohio." (Defs.' Mem. 21.) ACE, by contrast, asserts that the policies were "negotiated, brokered, underwritten and performed in New York" and therefore "those individuals involved in creating the ACE Policies likely reside in New York." (Pls.' Opp'n 24.) Moreover, ACE asserts that "the written evidence from, among others, GrafTech's broker, is likely located in New York" and thus "potentially necessary witnesses for trial likely reside within the subpoena power of the Southern District." (Id.) While New York may be more convenient with respect to issues involving the negotiation and performance of the insurance policies, GrafTech's headquarters in Ohio tends to favor the state forum, neutralizing this factor.

### 5. *Order of Filing*

The order of filing between this action and the Ohio state court action ostensibly favors this forum. Although GrafTech brought an initial suit against ACE in Delaware state court two days after ACE instituted this current action, nearly a year and a half had elapsed since ACE filed the present action when GrafTech dismissed the Delaware action and filed suit in Ohio state court. "Evaluation of the order of filing," however, "is to be 'considered in a common-sense manner by examining how much progress has been made in each forum.'" Machat v. Sklar, 96

Civ. 3796 (SS), 1997 WL 599384, at \*9 (S.D.N.Y. Sept. 29, 1997) (quoting Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York, 762 F.2d 205, 211 (2d Cir. 1985)).  The time lapse between the filing of the two actions occasions little prejudice to ACE.  At the time the Ohio state court action was filed, this Court had yet to rule on either of the parties' motions.  A number of factors have contributed to delay in this action, including the parties' attempts to mediate the dispute, ACE's pre-answer motion for summary judgment, and GrafTech's supplemental briefing of the motion to dismiss following the filing of the Ohio action.  In light of the posture of this case, GrafTech has yet to file an answer and no discovery has taken place.  Accordingly, this factor is less significant than it might otherwise be.

6.  *Choice of Law*

The last factor this Court will consider "under Wilton is whether the choice of law favors one forum over the other."  TIG Ins. Co., 2008 WL 2198087, at \*5.  Neither party argues that Ohio law should govern the interpretation of the ACE policies.  Nevertheless, Courts in this district have found the fact that "state law, not federal law, will govern the resolution . . . weigh[s] heavily in favor of abstention."  Travelers Indem. Co., 2004 WL 193564, at \*3.  While the parties disagree over which state's law should govern, there is no dispute that state, and not federal, law should govern.  The absence of federal law thus weighs in favor of abstention.  See A & E Television Networks v. Genuine Entm't, Inc., 09 Civ. 7422 (RJH), 2010 WL 2308092, at \*3 (S.D.N.Y. June 10, 2010) ("Though the applicability of *federal* law militates strongly against Brillhart abstention, the choice between different state laws is of comparatively small import, particularly when other factors point decidedly toward abstention.").

\* \* \*

On the balance of factors, abstention is appropriate here.

13

Having decided to abstain, the Court must determine whether to stay or dismiss this action.  "Wilton generally calls for staying, rather than dismissing, the declaratory judgment claim at issue, in order to preserve any of the plaintiff's claims that might not be resolved by the pending state proceeding."  TIG Ins. Co., 2008 WL 2198087, at *5 (citing Wilton, 515 U.S. at 288 n.2).  Nevertheless "where 'there is no risk that plaintiff's claims of non-coverage might become time-barred as they may be asserted in defense of any claims under the Policy [, then] dismissal rather than a stay is appropriate."  Id. (alteration in original) (quoting Warrantech Corp., 2001 WL 194903, at *3 n.1).  The parties agree that all of the issues raised here can be resolved in the Ohio action.  (Transcript of Telephone Conference, June 12, 2014 ("6/12/14 Tr.") 4:5-10, 5:2-8.)  As there is "no danger, whether from a time-bar or otherwise, that [ACE] will be prejudiced by the dismissal of this action rather than a stay," TIG Ins. Co., 2008 WL 2198087, at *5, ACE's action for declaratory relief shall be dismissed rather than stayed.  See Reliance Ins. Co. of Illinois v. Multi-Fin. Sec. Corp., 94 Civ. 6971 (SS), 1996 WL 61763, at *5 (S.D.N.Y. Feb. 13, 1996) ("I dismiss rather than stay because neither party has suggested that the Colorado court would be unable to resolve all of the issues raised by the federal action because of a time or other procedural bar.").

### CONCLUSION

For the foregoing reasons, GrafTech's motion to dismiss is granted.  ACE's motion for summary judgment is denied as moot.  The Clerk of Court is respectfully directed to close item numbers forty-one (41) and forty-two (42) on the docket and close the case.

SO ORDERED.

Dated:      June 24, 2014
            New York, New York

Ronnie Abrams
United States District Judge

14